# IN THE UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**ENDICOTT-QUINONES ET AL., ET AL.**

      Plaintifs-Appellees,

v.

**GARZA, et al.**

      Defendants-Appellants.

On Appeal from the United States District Court
for the District of New Mexico
The Honorable David H. Urias
United States District Judge
Case No. 21-cv-00368 DHU/JMR

## APPELLANTS' REPLY BRIEF

Respectfully Submitted,

JAMES J. GRUBEL
ALFRED A. PARK
Attorney for Defendants/Appellants
PARK & ASSOCIATES, LLC
3840 Masthead St. NE
Albuquerque, NM 87109
(505) 246-2805
jgrubel@parklawnm.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................iv

SUMMARY OF THE ARGUMENT ......................................................1

ARGUMENT ...........................................................................................2

    I.  The District Court erred in finding that there was a special relationship. ………………………………………………………………..............2

            1.  A special relationship is based on the level of restraint, not on ultimate and theoretical control as proposed Plaintiff……………2

            2.  Plaintiffs' cited authority does not support their conclusion that there was a special relationship…………..……………..…………4

            3.  Plaintiffs' assertion that New Mexico Law provides a broader level of custody than other states is not relevant………………………9

            4.  Plaintiffs misread *Armijo*………………...………………………13

    II.  Defendants did not create or enhance any danger to the Children and Plaintiffs' arguments are unsupported hyperbolic emotional appeals…....…15

            1.  The key inquiry is whether a child is transferred to a new caretaker at the direction of the state……………………………………….15

            2.  Plaintiffs' hyperbolic hypotheticals are not based on the undisputed facts……………………………………………………………16

            3.  The *status quo ante* was restored by the trial home visit…………18

    III.  Defendants are entitled to qualified immunity…………………………...21

            1.  Case authority does not equate a trial home visit with a foster care visit…………………………………………………………….21

            2.  Plaintiffs have failed to meet their burden that the constitutional protection was clearly established………………………………23

IV.      Plaintiffs cannot show harm as a matter of law because it is undisputed that the injury to MB occurred six months after the trial home visit..........25

CONCLUSION......................................................................................................27

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS...........28

CERTIFICATE OF SERVICE ................................................................................29

CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS.......................................................................................29

# TABLE OF AUTHORITIES

A.M. ex rel. Youngers v. New Mexico Dep't of Health,
  65 F. Supp. 3d 1206 (D.N.M. 2014)…………………………………….……..7

Armijo v. Wagon Mound Pub. Schs.,
  159 F.3d 1253(10th Cir. 1998) ......................................................2, 10, 13, 14

A.S. By & Through Blalock v. Tellus,
  22 F. Supp. 2d 1217 (D. Kan. 1998)…………………………….……….10, 22

Ashcroft v. al-Kidd, 563 U.S. 731,
  131 S.Ct. 2074, 2083 (2011)…………………………………………….25

Currier v. Doran,
  242 F.3d 905 (10th Cir. 2001)……………………………………15, 16, 22, 25

Dahn v Amedei,
  867 F. 3d 1178 (10th Cir. 2017)……………………………………………..6

DeShaney v. Winnebago County Dep't of Social Servs.,
  489 U.S. 189 (1989)…………………………………9, 12, 17, 19, 22, 24, 28

D.R. v. Middle Bucks Area Vocational Technical Sch.,
  972 F.2d 1364 (3d Cir.1992)……………………………………….....5

Est. of B.I.C. v. Gillen,
  761 F.3d 1099 (10th Cir. 2014)……………………………………………26

Est. of Johnson v. La Causa Inc.,
  No. 10-C-953, 2011 WL 5319909, at *7 (E.D. Wis. June 24, 2011).10, 11, 20, 22

Garcia v. Patton,
  14-CV-01568-RM-MJW 2016 WL 879635 (D. Colo. Mar. 8, 2016)……...21

Henry v. City of Erie,
  728 F.3d 275 (3d Cir. 2013)………………………………………………..25

Horton v. Flenory,
  889 F.2d 454, 458 (3d Cir. 1989)………………………………………19, 20

Hubbard v. Oklahoma ex rel. Oklahoma Dep't of Hum. Servs.,
  759 F. App'x 693 (10th Cir. 2018)…………...…....………..10, 11, 12, 22, 24

Johnson ex rel. Cano v. Holmes,
     377 F. Supp. 2d 1039 (D.N,M. 2004)……………………………………....7

K.H. Through Murphy v. Morgan,
     914 F.2d 846, 849 (7th Cir. 1990)……………………….....16, 17, 22, 28

Lee v. Univ. of N.M.,
     449 F.Supp.3d 1071 (D.N.M. March 30, 2020)………………..……..24

Matthews v. Bergdorf,
     889 F.3d 1136, 1146 (10th Cir. 2018)………………………..……..2, 6

Maldonado v. Josey,
     975 F.2d 727 (10th Cir. 1992)………………………………….……4, 5

Pueblo Neighborhood Health Centers, Inc. v. Losavio,
     847 F.2d 642, (10th Cir.1988)………………………………………...23

Ruiz v. McDonnell,
     299 F.3d 1173, 1183 (10th Cir. 2002)………………………………...25

Schrier v. Univ. of Colorado,
     427 F.3d 1253, 1260 (10th Cir. 2005)…………………………...…19

Schwartz v. Booker,
     702 F.3d 573 (10th Cir. 2012)……………………………….……..12

Smith v. D.C.,
     413 F.3d 86, 94 (D.C. Cir. 2005)…………………………..8, 9, 23

T.D. v. Patton,
     868 F.3d 1209 (10th Cir. 2017)…………………………….…..15, 23

White v. Pauly,
     137 S. Ct. 548, 552 (2017)…………………………………………24

Wooten v. Campbell,
     49 F.3d 696, 699 (11th Cir. 1995)…………………………10. 11, 22, 23, 24

Yvonne L., By & Through Lewis v. New Mexico Dep't of Hum. Servs.,
     959 F.2d 883, 891 (10th Cir. 1992)…………………………………3, 12

NMAC 8.10.8.13 G.(2)(c)………………………………………………...12

# SUMMARY OF ARGUMENT

The District Court erred when it found that the Children were in foster care, thereby establishing that they had a special relationship with the Defendants. Neither the District Court, nor the Plaintiffs, offer any legal support for this conclusion and, in fact, take contradictory positions. Moreover, neither the District Court, nor the Plaintiffs, identify how placement of the Children for a trial home visit rendered them wholly dependent on the Defendants. Indeed, Plaintiffs fail to identify analogous case authority to support their position.

Additionally, the conclusion that the *status quo ante* was not restored by returning the Children to their parents' home is incorrect. Moreover, even if the *status quo ante* was not restored, the law is not clear in this respect. It is Plaintiffs' burden to demonstrate that a claimed constitutional right is well-established. They have identified no on-point authority and, therefore, Defendants are entitled to qualified immunity.

Finally, Plaintiffs assert that MB was injured six months after her placement on a trial home visit. As a matter of law, this six-month period precludes a finding that Defendants put Plaintiffs "at substantial risk of serious, immediate, and proximate harm."

The Defendants seek a reversal of the District Court's denial of their Renewed Motion for Summary Judgment and request that it is granted as a matter of law.

# REPLY ARGUMENT[1]

## I. The District Court erred in finding that there was a special relationship.

> 1. A special relationship is based on the level of restraint, not on ultimate and theoretical control as proposed by Plaintiffs

Plaintiffs' Response incorrectly asserts that the District Court's holding that the Plaintiffs and Defendants had a special relationship was consistent with this Circuit's test to determine if such a relationship exists. Resp. at 17. In the Tenth Circuit, "the focus of the special-relationship theory is the level of restraint imposed on an individual at the time of that individual's injury." Armijo v. Wagon Mound Pub. Schs., 159 F.3d 1253, 1261-62 (10th Cir. 1998). "The state has a special relationship with only individuals dependent completely on the state to satisfy their basic human needs. In the Tenth Circuit, the classic examples are prisoners, individuals committed against their will to mental institutions, and individuals in state run foster care." Matthews v. Bergdorf, 889 F.3d 1136, 1146 (10th Cir. 2018) (emphasis supplied).

However, neither the District Court, nor Plaintiffs, explained how placement of the Children on a trial home visit with their parents restricted their freedom to protect themselves equivalent to incarceration, institutionalization, or foster care. Rather, the District Court baldly concluded that the "Children were 'in foster care'

---

[1] For the convenience of the Court, Defendants' "Reply Argument" tracks and responds to the organizational structure as set forth in Plaintiffs' Answer Brief.

during the trial home visit at their father's home." [Ex. A at 26; App Vol 1 at 205]. This conclusion has no support in law and is fundamentally flawed. The District Court and Plaintiffs fail to rebut the multiple cases cited by Defendants that indicate that there is no special relationship when children are returned to their parents. Yvonne L. ex rel. Lewis v. New Mexico Dep't of Human Servs., 959 F.2d 883 (10th Cir. 1992)("[T]here is no affirmative duty of the state to protect a child who is in his parents' custody").

Plaintiffs attempt to sidestep this clear error by asserting that because the Children were in the legal custody of CYFD, Defendants had the right to determine where the Children resided. Resp. at 20. However, establishing whether a special relationship exists demands more than just the right to determine where a child lives. There must be a severe restraint on the Children's liberty.

Here, it is undisputed that the Children were in the home of their biological parents. There was no allegation by Plaintiffs, nor was there a finding by the District Court, that the biological parents did not have the practical responsibility of meeting the immediate needs of the Children while they were on a trial home visit. There is no dispute that the Children were in the home of their parents and not in the home of a foster parent chosen by the Defendants.

Furthermore, the District Court and Plaintiffs were inconsistent in their conclusions of whether the Children were in foster care. Plaintiffs assert that the

Children were in foster care during the trial home visit.  <u>Resp.</u> at 38.   Yet they have also asserted that the *status quo* was safe foster care, which Defendants disrupted by moving Plaintiffs to the home of their parents . [App. Vol 1. at 94]   The District Court likewise took contradictory positions depending on whether it was analyzing theories of liability under danger creation or the special relationship.   The District Court found that the "Children were 'in foster care' during the trial home visit at their father's home."   [App Vol 1 at 205]. But then the District Court found "Defendants modified the *status quo* by <u>removing</u> the Plaintiffs from a place of safety, foster care, and starting a trial home visit with a person they knew was dangerous." [App. Vol. 1 at 192] (emphasis supplied).

2.  <u>Plaintiffs' cited authority does not support their conclusion that there was a special relationship</u>

Plaintiffs assert that there is a special relationship as long as the state "retains ultimate responsibility for [a] child's food, shelter clothing medical care and reasonable safety." <u>Resp.</u> at 17, (<u>citing</u> <u>Matthews v. Bergdorf</u>, 889 F.3d 1136, 1146 (10th Cir. 2018)).  Specifically, Plaintiffs rely on <u>Maldonado v Josey,</u> 975 F.2d 727 (10th Cir. 1992) for the proposition that "[a]lthough a child may well be in the 'custody' of… school authorities during school hours this custody does not amount to a restraint on the child and his parents from caring for the basic needs of the child" <u>Id</u>. at 732-33.  However, <u>Maldonado</u> does not assist Plaintiffs and actually supports the Defendants' position.

Maldonado concluded that there was no special relationship between a school and a student because the student's parents are still responsible for the basic needs of the child. Id. at 731  Here, Plaintiffs assert that the Children were in a special relationship while on the trial home visit because Defendants could determine where the Children would live.  Pursuant to the reasoning in Maldonado, this is insufficient. Maldonado cited the Third Circuit case of  D.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364 (3d Cir.1992).  D.R. "distinguished the incarceration and institutionalization cases from those involving school students because the former involve 'full time severe and continuous state restriction[s] of liberty' and render the institutionalized 'wholly dependant [sic] upon the state ... to meet their basic needs." Maldonado at 732, quoting D.R. at  1371.

 Here, the Children were not wholly dependent on the Defendants for their basis needs, nor was there a full time severe and continuous restriction of liberty. For example, the Children were free to travel with their parents to appointments, to get food, to go to parks, etc.  There is no evidence whatsoever that they were locked in a prison or in an institution.  There is no evidence or allegations that the Children were housed in a facility operated and staffed by CYFD.

Instead, Plaintiffs rely on multiple other cases, none of which support a finding that there was a special relationship between the Children and the Defendants when they were placed on a trial home visit.

Dahn v. Amedei, 867 F. 3d 1178 (10th Cir. 2017) considered the geographical reach of the special-relationship doctrine. Specifically, the parties asked the Tenth Circuit "to decide whether the special relationship—and its accompanying duty to protect—crosses state lines". Dahn at 1181. The child in Dahn had been in foster care and then was placed for adoption. Notably, both of these relationships involve placement of a child with people of the state's choosing. Dahn did not address children placed with their biological parents for a trial home visit.

Matthews v. Bergdorf, 889 F.3d 1136 (10th Cir. 2018) concerned allegations of nine children asserting that they were abused by adults with whom they were placed. Notably, none of the children were returned to their biological parents. Rather, whether there was a special relationship depended on the nature of each child's placement. Matthews found that four children living with guardians pursuant to a guardianship did not have a special relationship. Likewise, a situation where two children lived with adults on unknown terms did not give rise to a special relationship. Likewise, children that had been adopted were found to not have a special relationship with the state. However, allegations of abuse by adults who were appointed guardian of a child by the defendants were sufficient to establish that the child was in an involuntary relationship with the state and a special relationship could, therefore, exist.

Significantly, Plaintiffs do not explain how <u>Matthews</u> is relevant to the facts. Rather, Plaintiffs claim that these cases "illustrate that a special relationship 'neither turns on physical presence nor day-to-day control.' <u>A.M. Youngers v New Mexico Dep't of Health</u> 65 F. Supp. 3d 1206 (D.N.M. 2014)." <u>Resp.</u> at 108. However, <u>A.M.</u> recognized that "<u>although the state has no substantive due-process obligations to protect children from their biological parents</u>, such obligations arise when the state assumes the role of guardian—as with children in foster care, prisoners, and developmentally disabled individuals." <u>A.M.</u> at 1599 (emphasis supplied). Plaintiffs provide no support for their conclusion that maintaining legal custody during the trial home visit created a special relationship. The parents were not appointed by the Defendants to be the guardians of the Children. That relationship arose from their biological relationship.

Plaintiffs also fail to explain how <u>Johnson ex rel. Cano v. Holmes</u>, 377 F. supp 2d 1039 (D.N,M 2004), *aff'd sub nom*, <u>Johnson ex rel. Est. of Cano v Holmes</u>, 455 F.3d 1133 (10th Cir. 2006) is relevant. In <u>Cano</u>, the state defendants conceded that there was a special relationship in placing a child in the home of an adoptive parent. <u>Cano v. Holmes</u>, 455 F.3d 1133, 1143. Accordingly, the issue of whether a special relationship existed in the first place was not at issue. <u>Cano</u>, therefore, provides no guidance here.

Likewise, Plaintiffs' reliance on Smith v. D.C., 413 F.3d 86, 94 (D.C. Cir. 2005) is misplaced. In Smith, a minor, Tron, "was an adjudicated delinquent whom the District Court had, by affirmative exercise of its police power, placed with its agent, ESA, through a court order revocable only by another court order." Id. at 94.

> An adjudicated delinquent placed at ESA by a restrictive court order, Tron had to participate in the program. To be sure, Tron had more freedom than a prisoner—subject to ESA rules, he could come and go, and take ESA-approved weekend home visits. ESA's failure to crack down on Tron's curfew violations also left him with a longer leash than he was formally entitled to under the program's rules. But such flexibility hardly amounts to freedom from state restraints. Tron had to live at Queenstown Apartments. He had no choice. He risked punishment, including the possibility of returning to Oak Hill, when he failed to obey ESA restrictions on how and where he spent his time. The District had "restrain[ed his] freedom to act on his own behalf."

> Id.

Further, Smith explains that "where the government assumes full responsibility for a child by stripping control from the family and placing the child in a government-controlled setting, the government has a duty not to treat the child with deliberate indifference. Id. at 95.

The facts here are dissimilar from Smith. The Children were not placed in a government-controlled setting, unlike Tron, who having been declared delinquent, was placed in a situation more akin to incarceration. Here, the Children were placed in the home of their biological parents, who undisputably had primary control over the Children. The Plaintiffs never explain how the facts here are analogous to Smith.

8

The Plaintiffs also cherry pick the reasoning of Smith, for example, when they claim that courts have treated custody as an all-or-nothing inquiry. Resp. at 18. When read in context, Smith does not stand for this proposition. Smith opines:

> For our purposes, it matters not at all whether DeShaney custody requires that the government be the child's primary caretaker, that the government constrict the child's liberty, or both. Nor does it matter whether DeShaney custody is an all-or-nothing affair or can instead, as the First Circuit has suggested, attach at intermittent times based on particular circumstances, see Hasenfus, 175 F.3d at 72. In Tron's case, like the foster care cases and unlike the public school cases, all these conditions were met. The District served as Tron's legal custodian and primary caregiver. It placed him in a program that constrained his liberty by limiting, among other things, where he lived and what he could do. Indeed, Tron was murdered while subject to these constraints—at Queenstown Apartments, at night, and during curfew. For DeShaney purposes, then, Tron remained in District custody.

Smith at 96. Pursuant to the above reasoning, Smith does not stand for the proposition that custody is a binary choice. Indeed, applying the reasoning here could at least lead to the conclusion that the Children, when on a trial home visit, were not restrained by the Defendants because they did not meet all the conditions that were found in Smith. They were not in a facility run and operated by the Defendants. They were not subject to a curfew, and there were no specific limits on what the Children and their parents could do.

3. Plaintiffs' assertion that New Mexico Law provides a broader level of custody than other states is not relevant

Plaintiffs assert that "New Mexico law vests CYFD with sweeping authority over the lives of children in legal custody." Resp. at 20. However, this conclusion

9

is based Plaintiffs' misapprehension of the case authority discussed above. As mandated by the Tenth Circuit in Armijo, the test is whether the state exercises a level of restraint that restraint at the same "level of involuntary restraint as arresting, incarcerating, or institutionalizing an individual." Armijo at 1261. Plaintiffs' analysis relies on the assumption that legal authority equates to actual control and restraint. However, that is not supported by the facts here. Moreover, it is not supported by authority that analyze facts more analogous to the facts present here.

Plaintiffs attempt to distinguish Wooten v. Campbell, 49 F.3d 696, 699 (11th Cir. 1995), A.S. By & Through Blalock v. Tellus, 22 F. Supp. 2d 1217, 1221 (D. Kan. 1998), and Hubbard v. Oklahoma ex rel. Oklahoma Dep't of Hum. Servs., 759 F. App'x 693, 709 (10th Cir. 2018), by claiming that these cases relied on state definitions of custody that were more restrictive than in New Mexico. However, the Plaintiffs' reasoning is too narrowly focused.

Plaintiffs cite to Est. of Johnson v. La Causa Inc., No. 10-C-953, 2011 WL 5319909, at *7 (E.D. Wis. June 24, 2011) asserting that Wooten's analysis was dependent on the definitions of physical and legal custody under Georgia law, as opposed to Wisconsin's definition. Resp. at 14. However, Est. of Johnson is of no aid to Plaintiffs. The court there found that

> Wooten is factually distinguishable. In the present case, Will was not living fulltime with his mother, as was the child in Wooten. Rather, the complaint indicates that Will resided with a person chosen by the state under circumstances akin to a foster care arrangement. Will was with

his mother only for the limited purpose of a visit that was scheduled to last only a few hours.

Est. of Johnson at *7.

Here it is undisputed that the Children were living full time with their parents.[2] The Children were not with their parents for a visit that was designed to last less than one day. While the Children's trial home visit could be terminated at CYFD's discretion, the trial home visit was not limited by a specific time frame, such as the few hours anticipated by Est. of Johnson. Plaintiffs' citation to New Mexico's definition of custody is not helpful. The facts here are more like Wooten than those in Est. of Johnson.

Similarly, Plaintiffs allege that the finding of this Court in Hubbard that there was no special relationship between children and the state was "required by Oklahoma law." Resp. at 23. However, Oklahoma law was not implicated or discussed in the analysis. Rather, Hubbard disposed of the special relationship claims in reference to the time period[3] in which the subject children were in the custody of their biological parents in one short paragraph. Hubbard succinctly concluded:

The special relationship exception applies when a child is placed in foster care. Schwartz, 702 F.3d 573 at 580. It does not apply when the

---

[2] Notably, the child was formally placed with a cousin and was still living with that cousin at the time of the visit to the mother. Est of Johnson at *1.
[3] Hubbard separately analyzed pre- and post-foster care placements and treated them differently.

> children are in the custody of their biological parents. *Yvonne L.*, 959 F.2d at 891 ("[T]here is no affirmative duty of the state to protect a child who is in his *parents'* custody." (citing <u>DeShaney</u>, 489 U.S. at 201, 109 S.Ct. 998) ). Accordingly, the Hubbards do not a state a claim for relief under this theory.

<u>Hubbard</u> at 709. Significantly, New Mexico law does not support the conclusion that the Children were in foster care.

Specifically, CYFD regulations do not support the conclusion that a child in a trial home visit is contemporaneously in foster care. The New Mexico Administrative Code provides in relevant part, "[i]f a trial home visit exceeds six months in duration, or exceeds a longer time period deemed appropriate by the court, <u>and the child is subsequently returned to foster care</u>, the placement is considered a new placement and procedures must be followed to newly establish title IV-E eligibility." NMAC 8.10.8.13 G.(2)(c) (emphasis supplied). The foregoing language presumes there is a distinction between foster care and a trial home visit. Indeed, they are mutually exclusive.

Moreover, the District Court did not base its conclusion that there was a special relationship on its interpretation of New Mexico law. Rather, the District Court simply concluded that the Children were in foster care. It bears repeating that the District Court's conclusion was not supported by the evidence, nor was it supported by a plain reading of the relevant law. The notices relating to placing the Children on a trial home visit clearly state that they were not in foster care. They

12

stated "[p]ursuant to Section 32A-4-14 NMSA, 1978, you are notified that the Placement of [Children] was changed on March 31, 2020 <u>from non-relative foster care to trial home visit.</u>" [App. Vol 2 at 024-025] (emphasis supplied). While Plaintiffs essentially assert that the term "custody" is not defined as Defendants assert, that ambiguity leads to the conclusion that the law is not clearly established and warrants dismissal of the special relationship theories based on qualified immunity as discussed *infra*.

### 4. Plaintiffs misread *Armijo*

Plaintiffs assert that <u>Armijo</u> does not implicate any measure of the physical control over the Children to determine whether a special relationship exists. <u>Resp</u>. at 26. Plaintiffs' assertions are a mere argument over semantics and a diversion from the fact that Plaintiffs have not identified authority that supports their argument that a special relationship existed between the Defendants and the Children. <u>Armijo</u> and <u>DeShaney</u> both require an analysis in order to determine if a situation resembles incarceration or institutionalization. The fundamental question posed by <u>Armijo</u>, and other cases, is whether "the state restrains an individual's freedom to act to protect himself or herself through a restraint on that individual's personal liberty." <u>Armijo</u> at 1261.

Here, it is undisputed that the Children were living with their biological parents at the time of the trial home visit. Plaintiffs cannot demonstrate that the

Defendants had physical control over the Children to the extent that it impaired their liberty to care for themselves. They were in the care of their parents, not the Defendants.

Further, Plaintiffs claim that Defendants' citation to the example of the student in the administrator's care in Armijo is dicta and not relevant. However, the example cited demonstrates that there *could* be a restraint depending on the situation. Resp. at 28. At the end of the day, however, like here, the parents in Armijo were responsible for the daily needs of the child and there was no special relationship.

Plaintiffs also misstate Defendants' position when they assert that state workers "would only be obligated to protect foster children from state actors." Resp. at 26. To be clear, the state has clear duties to protect children it has placed in foster care pursuant to the special relationship. However, a special relationship did not exist once the Children were placed in the home of their parents for a trial home visit. Defendants posited a hypothetical of a fire in the parents' home to demonstrate that the parents are the people who are present in the home, not state workers. It also emphasizes that the living arrangement for the Children was dissimilar from incarceration or the like. Plaintiffs advance no well supported arguments to the contrary.

## II. Defendants did not create or enhance any danger to the Children and Plaintiffs' arguments are unsupported hyperbolic emotional appeals

1. The key inquiry is whether a child is transferred to a new caretaker at the direction of the state

Defendants did not create or enhance any danger to the Children when they *returned* them to their biological parents for a trial home visit. Plaintiffs fail to identify any authority finding that returning children to the parent from whom they were removed can be the basis of a claim of danger creation. Instead, the focus of the authority cited by Plaintiff is, but for the actions of the state defendants, would a child have been placed with the person who harmed him. See Currier v. Doran, 242 F.3d 905, (10th Cir. 2001). Accordingly, taking a child from a custodial biological mother and placing that child with a non-custodial biological parent who does harm could support danger creation. See Currier and T.D. v. Patton, 868 F.3d 1209, (10th Cir. 2017).

Plaintiffs suggest that Currier held that "distinctions…between foster and natural parents…are arbitrary." Resp at 33. However, Plaintiffs' assertion is taken out of context and misses the point. The cited portion of Currier was deliberating whether taking a child from a parent and placing with another parent or relative would shield the state defendants. Currier found that "the reasoning used by the Seventh Circuit…actually supports constitutional liability when custody is transferred from one parent to another." Currier at 918–19. Accordingly, Currier

found that taking a child from a custodial mother and transferring that child to a non-custodial father supports a claim of danger creation. However, that is not the situation here. It is undisputed that the Children were returned to the parents from whom they were originally taken. This analysis need not consider the biological relationship.

2. Plaintiffs' hyperbolic hypotheticals are not based on the undisputed facts

Plaintiffs assert three hypotheticals not based on the facts of this case engineered to elicit an emotional response. First, Plaintiffs posit "[i]f the fire department rescues you from a fire that would have killed you, this does not give the department a constitutional license to kill you, on the ground that you will be no worse off than if there were no fire department." K.H. Through Murphy v. Morgan, 914 F.2d 846, 849 (7th Cir. 1990). Resp. at 12.

That hypothetical has no bearing on the facts here. There are no allegations or evidence that any of the Defendants directly injured any of the Children. The Children were harmed by third-parties.[4] Therefore, the hypothetical has no bearing on this case.

Moreover, K.H., like most of the authority relied on upon by Plaintiffs, involves placement of children with foster parents of the state's choosing. Indeed, K.H. found that it was "not a 'positive liberties' case, like DeShaney, where the

---

[4] It is assumed *arguendo* that the parents harmed the Children.

16

question was whether the Constitution entitles a child to governmental protection against physical abuse by his parents or by other private persons not acting under the direction of the state." K.H. at 848-49. In Plaintiffs' hypothetical, the actor is clearly an agent acting under state authority.

Second, Plaintiffs allege that the actions of the Defendants are the equivalent of a police officer rescuing a child from a dumpster and then deciding to throw that child back in the dumpster because the officer did not want to be bothered with the paperwork. Resp. at 2.

The flaw with Plaintiffs' second hypotehical is that it is undisputed that the actions of the Defendants did not directly cause harm to the Children. In the hypothetical, a police officer, a clear agent of the state, directly acted to harm a child. Indeed, the harm was immediate, as one can presume a newborn will not survive long alone in a dumpster. There is also no allegation that a third-person caused the baby harm. Here, the undisputed facts are that the Defendants returned the Children to their parents. Then, many months later, one of those Children was left at a hospital by her mother with serious injuries.

Plaintiffs' last hypothetical postulates that "an abused girl is taken from her biological father and placed in foster care. The father calls the state's child protective services office. He asks a social worker to bring his daughter to his house, so that he

can beat her to death. The social worker—seeing an opportunity to reduce her case load—drives the girl to the father's house, where she is killed." Resp. at 2.

Again, Plaintiffs' hypothetical is not based on the facts here. In the hypothetical, the child was immediately harmed by the father. It is undisputed that any harm to the Children here took place many months later – the trial home visit began in March and April 2020 and the youngest child is left at hospital in North Carolina in October 2020. Plaintiffs are attempting to distract the Court because the facts here do not support danger creation. There was no immediate and proximate harm to the Children as a result of the trial home visit.

3. The status quo ante was restored by the trial home visit

Plaintiffs argue that the *status quo ante* was not restored by the trial home visit. Resp. at 35. Instead, Plaintiffs maintain that the *status quo ante* was the parents under arrest and the Children physically separated from those parents. Id. Plaintiffs' position related to the interactions of the local police with the family is pedantic and irrelevant. The *status quo ante* is the "last peaceable uncontested status existing between the parties before the dispute developed." Schrier v. Univ. Of Colorado, 427 F.3d 1253, 1260 (10th Cir. 2005)). While Schrier concerns the *status quo* in relation to the issuance of an injunction, the definition fits this circumstance. Prior to any interactions between the Children and any state official, including local

police, it is undisputed that the family was in a Walmart parking lot in Hobbs, New Mexico. It was not in police custody.

Plaintiffs allege that during the trial home visit "the Parents had physical control but no custodial power." Resp. at 36. Plaintiffs aver that in similar cases courts have found that the *status quo ante* was not restored. Plaintiffs cite Horton v. Flenory, 889 F.2d 454, 458 (3d Cir. 1989) for the proposition that there is liability where the defendants' actions significantly changed the nature of the plaintiff's custody. Resp. at 36. However, Plaintiffs provide no analysis and their citation to Horton is not relevant to the placement of children with their parents for a trial home visit.

Moreover, Horton is focused on the special relationship, not danger creation.[5] Horton involved a private bar owner interrogating a witness. A local bar owner restrained a patron and was interrogating him. The owner called for assistance from the local police. Id. A local sergeant arrived and interrogated the patron and instructed him to stay seated. The decision before the Third Circuit was whether an individual was in state custody at the time of his fatal beating by the bar owner. The Third Circuit determined that the patron was in state custody given the actions of the

---

[5] Horton was remanded to the Third Circuit based on the then recent decision in DeShaney. The Third Circuit did not use the term "special relationship", but that is the focus of that case.

19

local police officer.  <u>Horton</u> at 458.  <u>Horton</u> is simply not relevant to the matters in dispute here.

Likewise, Plaintiffs' reliance on <u>Est. of Johnson</u> is also unhelpful and actually undermines Plaintiffs' position.  <u>Resp</u>. at 36   As described above, a child in state custody, legal and physical, was permitted to have a brief visit with his biological mother.  During that visit the child was drowned in the bathtub by the mother.  The defendants in that case asserted that they had restored the *status quo* because they had returned the child to his mother, which is precisely the arrangement that would have existed had the state never intervened.  <u>Est. of Johnson</u> at * 9.  Notably, the court found that "the complaint does not allege that the state actors returned Will to his mother fulltime, thus restoring the *status quo*."  <u>Id</u>.  The court found danger creation because the child was under the full control of the state.  However, had the child been restored to live with the mother full time, that would not have supported danger creation.  <u>Id.</u>  Here, the Children were returned to their parents full time.  Therefore, <u>Est. Of Johnson</u> does not assist Plaintiffs and it defines the <u>status quo</u> as where children live full time.

Lastly, Plaintiffs posit that the *status quo ante* was the Children in the legal and physical custody of their parents.  However, Plaintiffs assert that during the trial home visit, only physical control was returned to the parents.  Plaintiffs conclude that the *status quo*, therefore, was not restored.  Plaintiffs cite to no case law that

supports their position. Moreover, Plaintiffs have the burden of showing that the law was clearly established in order to overcome Defendants' defense of qualified immunity. They have failed to do so. To the extent this question is not answered, then Defendants necessarily prevail.

### III. Defendants are entitled to qualified immunity

1. <u>Case authority does not equate a trial home visit with foster care</u>

Plaintiffs' Response fails to cite any support "that would equate placing a child with his natural father as a 'restraint' on the child, and certainly not a restraint that rises "to the same level of involuntary restraint as arresting, incarcerating, or institutionalizing an individual." <u>Garcia v. Patton</u>, 14-CV-01568-RM-MJW, 2016 WL 879635 at *12 (D. Colo. Mar. 8, 2016), <u>aff'd sub nom.</u> <u>T.D. v. Patton</u>, 868 F.3d 1209 (10th Cir. 2017).

Much of the case authority relied upon by Plaintiffs centers on children harmed when they are in foster care. Notably, Plaintiffs cite to no case authority from the United State Supreme Court or the Tenth Circuit to support their contention that children in the home of their biological parents, from whom they were initially taken, but who are still in the legal custody of the state, have due process claims if they are harmed by their parents. Indeed, the most factually analogous cases, <u>Wooten</u> and <u>Hubbard</u>, refute Plaintiffs' position. For ease of reference, the main cases relied on the parties are as follows:

| Case | Placement | State Legal Custody | State Physical Custody | Special Relationship | Danger Creation |
|---|---|---|---|---|---|
| A.S. v. Tellus | Child living with mother but state had legal custody | Yes | No | No | No |
| Currier v. Dornan | Placed with non-custodial father | Yes | Yes | N/A | Yes |
| DeShaney v. Winnebago | Returned to father | No | No | No | No |
| Est. of Johnson | Short visit with mother | Yes | Yes | Yes | Yes |
| Hubbard (pre foster care) | Trial reunification with parents | Yes | No | No | No |
| Hubbard (foster care) | Placement with foster parents | Yes | Yes | Yes | N/A |
| KH v. Morgan | Placement with foster parents | Yes | Yes | Yes | N/A |

| Smith v. D.C. | Delinquent Child held in state supplied housing. | Yes | Yes | Yes | N/A |
|---|---|---|---|---|---|
| T.D. v. Patton | Child placed with non-custodial parent | Yes | No | N/A | Yes |
| Wooten v. Campbell | Child in physical custody of mother | Yes | No | No | No |

2. <u>Plaintiffs have failed to meet their burden that the constitutional protection was clearly established</u>

"The plaintiff carries the burden of convincing the court that the law was clearly established." <u>Pueblo Neighborhood Health Centers, Inc. v. Losavio</u>, 847 F.2d 642, 645 (10th Cir. 1988). Rather than meeting their burden, Plaintiffs cite to facially distinguishable authority and their own hypotheticals. This is only evidence of how Plaintiffs want the law to be, not as it is. Plaintiffs have failed to meet their burden. Moreover, the weight of authority contradicts Plaintiffs' position.

"The special relationship exception applies when a child is placed in foster care. It does not apply when the children are in the custody of their biological parents." <u>Hubbard</u> at 709. Plaintiffs have identified no factually analogous counter

authority and instead rely on the flawed premise that the Children were in foster care while in their parents' home.

Plaintiffs also assert that Defendants have failed to define what is meant by the term "custody." However, it is Plaintiffs' burden to establish that the Defendants were on notice that trial home visits with biological parents could create a special relationship. "[T]he clearly established law must be 'particularized' to the facts of the case." Lee. v. Univ. of N.M., 449 F.Supp.3d 10711181 (D.N.M. March 30, 2020) (citing White v. Pauly, 137 S. Ct. 548, 552 (2017)). Having failed to meet their burden, any ambiguity in whether the law is clearly established inures to Defendants and they are entitled to qualified immunity.

Likewise, Plaintiffs have failed to identify how the *status quo ante* was not restored by placing the Children back with their parents, thereby preempting any claims of danger creation. None of the cases cited by Plaintiffs support the proposition that returning children to the home of the parents from whom they were taken supports danger creation. Rather, Plaintiffs rely on cases where children are injured by foster parents or by previously non-custodial biological parents who would not have had custody of children but for the intervention of child protective services. However, DeShaney, Wooten, and Hubbard all indicate that returning children to their parents is not danger creation unless the plaintiffs can show that the defendants made those parents more dangerous. "We do not require a case directly

on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al–Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). Here, at best for Plaintiffs, there is clearly a debate. Defendants, therefore, are entitled to qualified immunity.

## IV. Plaintiffs cannot show harm as a matter of law because it is undisputed that the injury to MB occurred six months after the trial home visit

In order for danger creation to apply, one of the elements that a plaintiff must prove is that the conduct of the defendants put the injured party "at substantial risk of serious, immediate, and proximate harm." Currier at 915-20. The District Court found that the "real focus of this element in on government actions that create 'a high probability of serious and substantial harm.'" [App. Vol. 1 at 198] The District Court and Plaintiffs ignore the fact that the words "immediate" and "proximate" modify the word "risk" and their interpretations read out any need for harm to be immediate.

Plaintiffs now assert the harm was immediate and proximate because the Parents fled New Mexico with the Children within two weeks of the trial home visit. Resp. at 41-42. However, the injuries to MB undisputably occurred six months after she was placed in a trial home visit. Plaintiffs offer no counter authority to Henry v. City of Erie, 728 F.3d 275, 284 (3d Cir. 2013) or Ruiz v. McDonnell, 299 F.3d 1173 (10th Cir. 2002), nor do they distinguish the facts here. Rather, Plaintiffs assert that

the present matter involves placement of a child in the hands of an abuser.  Resp. at 42.  However, Plaintiffs' logic would lead to absurd results.  For example, children who were taken from a parent who was addicted to drugs that resulted in abusive or neglectful acts could never be returned to that parent, even if that parent became sober, because there would always be a chance of relapse.  Under Plaintiffs' theory, a relapse six months or years after the last actions of state employees would lead to liability for danger creation as abuse/neglect typically flows from substance abuse. While the definitions of "immediate" and "proximate" require some flexibility, injuries that occurred six months after the fact simply do not qualify as either immediate or proximate as a matter of law.

Finally, Plaintiffs assert that the District Court was correct in finding that it was a disputed material fact that the "Defendants acted to hinder the efforts of third parties to rescue the Children from their abusers."  Resp. at 43.  However, while the District Court and Plaintiffs attempt to paint the actions of Defendants as actively hindering the efforts of third-parties, in reality Plaintiffs are asserting that the Defendants did not cooperate with local law enforcement.  See Est. of B.I.C. v. Gillen, 761 F.3d 1099, 1107 (10th Cir. 2014) (finding allegations regarding refusals to act were only "failures to act," including refusal by the defendant-social worker to accept a CD with pictures of abuse, refusal to return phone calls from the police, and refusal to substantiate allegations of abuse).  There is no evidence that any of

the Defendants actively prevented law enforcement from proceeding as it deemed appropriate. At most, Defendants did not volunteer to actively assist. Plaintiffs are seeking to impose a positive duty upon the Defendants to rescue them from their parents. This is a "positive liberties" case, like <u>DeShaney</u>, "where the question was whether the Constitution entitles a child to governmental protection against physical abuse by his parents or by other private persons not acting under the direction of the state." <u>K.H.</u> at 848–49. The answer is no.

## <u>CONCLUSION</u>

WHEREFORE Defendants respectfully request that the District Court be reversed, and judgment entered in favor of Defendants, and that the case is dismissed with prejudice, as to the federal claims.

Respectfully submitted,

/s/ *James J. Grubel*
JAMES J. GRUBEL
ALFRED A. PARK
Attorney for Defendants/Appellants
PARK & ASSOCIATES, LLC
3840 Masthead St. NE
Albuquerque, NM 87109
(505) 246-2805
jgrubel@parklawnm.com

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1.     This document complies with the type-volume limit of Fed. R. App. P. 32(a), the word limit of Fed. R. App. P. 7(b) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

[x]     This document contains 6,416 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because:

[x]     This document was prepared in a proportionally spaced typeface using Microsoft Word  in 14-point Times New Roman.


Date:  February 19, 2025

> s/ *James J. Grubel*
> JAMES J. GRUBEL
> ALFRED A. PARK
> Attorney for Defendants/Appellants
> PARK & ASSOCIATES, LLC
> 3840 Masthead St. NE
> Albuquerque, NM 87109
> (505) 246-2805
> jgrubel@parklawnm.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Appellants' Opening Brief was furnished by electronic means as more fully reflected in the CM/ECF certificate of on February 19, 2025:

**CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS**

I further certify that all required privacy redactions have been made and, with the exception of those redactions, every document submitted in Digital Form or Scanned PDF format is an exact copy of the written document filed with the Clerk, and that the digital submissions have been scanned for viruses with the most recent version of Microsoft Defender, updated February 19, 2025 and according to this program, they are free from viruses.

Respectfully submitted,

Date: February 19, 2025

s/ *James J. Grubel*
JAMES J. GRUBEL
ALFRED A. PARK
Attorney for Defendants/Appellants
PARK & ASSOCIATES, LLC
3840 Masthead St. NE
Albuquerque, NM 87109
(505) 246-2805
jgrubel@parklawnm.com